[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 30, 2004
THOMAS  K. KAHN
CLERK

_____

No. 03-14201
Non-Argument Calendar
_____

D. C. Docket No. 03-20129-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NEVIA KEVIN ABRAHAM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 30, 2004)**

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Nevia Kevin Abraham appeals his life sentences for (1) conspiracy to kidnap

a U.S. postal service employee, in violation of 18 U.S.C. § 1201(c); (2) kidnapping of a U.S. postal service employee, in violation of § 1201(a)(5); (3) use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (two counts); (4) forcible assault of a U.S. postal service employee, in violation of 18 U.S.C. § 111(a),(b); and (5) possession of a firearm by a convicted felon, in violation of § 924(e)(1).

On January 31, 2003, Abraham kidnaped a U.S. postal worker, seeking to use her as a means to secure entry into his girlfriend's home. On appeal, Abraham makes seven arguments. First, he argues that the district court abused its discretion by denying Abraham's request for additional peremptory strikes during jury selection or, alternatively, by refusing to excuse for cause a juror who was a Postal Service employee. We review a district court's decision to strike a prospective juror for cause for abuse of discretion. United States v. Rhodes, 177 F.3d 963, 965 (11th Cir. 1999). Abraham argues that it was inappropriate for the district court to seat a postal worker on the jury given the identity of the victim in this case. Abraham has failed to show, however, that the district court had any specific reason to conclude that the postal worker in question was incapable of impartially judging the defendant.

Second, Abraham argues that the district court abused its discretion by

admitting evidence of Abraham's prior bad acts under Fed. R. Evid. 404(b).  We

review the district court's rulings on the admissibility of evidence for abuse of

discretion.  United States v. Thomas, 242 F.3d 1028, 1031 (11th Cir. 2001).  The

district court admitted evidence that, on two occasions prior to the January 31

kidnaping, Abraham had used force and the threat of force against his girlfriend and

her relatives.  The evidence as to the first of these occasions indicated that, on

January 17, 2003, Abraham pushed and choked his girlfriend in her home.  As to

the second, which took place on January 21, 2003, the evidence indicated that

Abraham used a gun to threaten his girlfriend's mother and sister into helping him

secure entry into his girlfriend's house.  Abraham argues that the effect of this

evidence was more prejudicial than probative.  The government argues that the

evidence of Abraham's prior bad acts was admissible, not to prove Abraham's

character, but his motive, intent, or lack of mistake.  We find that the district court's

decision to admit the evidence was not an abuse of discretion.

Abraham's third argument is that the district court erred by not granting

Abraham's motion for a mistrial following testimony attributing racist statements to

Abraham.  We review the district court's denial of a motion for a mistrial for abuse

of discretion.  United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003).

Here, too, we do not find that the trial court has committed an abuse of discretion in

3

denying Abraham a mistrial, or that Abraham has made a showing of substantial prejudice sufficient to warrant a new trial.  See id.

Fourth, Abraham argues that the prosecutor committed misconduct by misrepresenting the defendant's excuse and making inflammatory and prejudicial comments about the defendant to the jury.  We will reverse a defendant's conviction for prosecutorial misconduct only if, "in the context of the entire trial in light of any curative instruction, the misconduct may have prejudiced the substantial rights of the accused."  United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997).  Where a defendant did not raise an issue below, our review is "limited to reviewing [the] claim[] of error for the first time on appeal under the plain error standard to avoid manifest injustice."  United States v. Harness, 180 F.3d 1232, 1234 (11th Cir. 1999).[1]  Because Abraham did not raise his argument of prosecutorial misconduct below, we review this claim under the plain error standard.  Abraham argues that during a post-arrest interrogation on January 31, he told an FBI agent and Miami-Dade police detectives that his girlfriend had threatened to kill their children and that he had acted out of concern for his children's safety.  He further argues that the prosecution disingenuously suggested at trial that Abraham fabricated his defense

_____

[1] Plain error requires (1) an error, (2) that is plain, (3) that affects the substantial rights of the defendant, and (4) that, if left uncorrected, would "seriously affect the fairness, integrity, or public reputation of a judicial proceeding."  United States v. Humphrey, 164 F.3d 585, 588 & n.3 (11th Cir. 1999).

4

theory sometime after his arrest. The government responds that Abraham's initial

explanation was simply that he wanted to remove his children from his girlfriend,

and that he added only later that he was concerned by an alleged threat to their

safety. Moreover, the government points to testimony indicating that Abraham

repeatedly forfeited opportunities to advise others that his girfriend had threatened

their children. In light of this testimony discrediting Abraham's defense, we find

that Abraham has not made the requisite showing of a plain error that substantially

affects his rights and that, if left uncorrected, would "seriously affect the fairness,

integrity, or public reputation of a judicial proceeding." Humphrey, 164 F.3d at 588

& n.3. Abraham also points to a prosecutorial statement about Abraham's use of a

piece of paper to monitor the opening and closing of his girlfriend's apartment door,

and to prosecutorial statements about his extramarital relationships and children.

The government concedes that the first of these statements was not supported by

record evidence but argues that the controlling and jealous behavior that it suggests

is more than adequately justified by the record. The government also argues that it

was defense counsel, not the prosecution, that first made an issue of Abraham's

extramarital relationships, and that any prejudice that may have resulted was

redressed by a curative instruction from the district court.[2] Considered as a whole,

---

[2] The government cites U.S. v. Wilson, 149 F.3d 1298, 1302 (11th Cir. 1998) (finding that while prosecutor's comments were improper, defendant could not show prejudice in light of

5

we find that the statements in question were not sufficiently prejudicial to warrant a mistrial.

Fifth, Abraham argues that the district court erred by admitting into evidence the recording of a 911 call under the excited utterance exception to the hearsay rule. Because Abraham did not raise it below, we review this evidentiary claim under the plain error standard. The 911 call was made by the half-brother of Abraham's girlfriend, Melvin Dore, on January 21, 2003, when Abraham used a gun to threaten his girlfriend's mother and sister into helping him secure entry into his girfriend's house. Dore had called to report that Abraham was abducting his mother and sister at gunpoint. Abraham argues that this recording was hearsay and that its admission into evidence violated Abraham's Sixth Amendment right to confront witnesses, given that Dore was available to testify. We find that the district court neither abused its discretion nor committed plain error in admitting the recording under the excited utterance exception to the hearsay rule.

Sixth, Abraham argues that his sentence was imposed in violation of the Ex Post Facto Clause. We review de novo a defendant's claim that his sentence was imposed in violation of the Ex Post Facto Clause. United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000). Because Abraham did not raise this claim below, we

court's curative instruction and overwhelming evidence of guilt.)

6

review it as well under the plain error standard. Abraham summarily argues that his sentence was imposed in violation of the Ex Post Facto Clause because the district court relied upon his prior escape conviction as a crime of violence in order to enhance his sentence under § 3559(c). Abraham contends that when he committed the crime of escape, "it was innocent and not a violent offense," and, by categorizing the offense as violent, the district court made the punishment for the crime of escape more burdensome than at the time of its commission.

"The ex post facto clause prohibits the enactment of statutes which . . . make more burdensome the punishment for a crime, after its commission . . . ." United States v. De La Mata, 266 F.3d 1275, 1286 (11th Cir. 2001). We have explained that the following two elements must be present in order for a court to find an ex post facto violation: (1) the law must be retrospective, meaning it applies to events occurring before its enactment; and (2) the offender must be disadvantaged by it. United States v. Rosario-Delgado, 198 F.3d 1354, 1356 (11th Cir. 1999) (citation omitted).

The federal "three strikes" law, which became effective on September 13, 1994, mandates a sentence of life imprisonment for a defendant who has been convicted of a "serious violent felony," if he previously was convicted of "one or more serious violent felonies and one or more serious drug offenses." 18 U.S.C.

7

§ 3559(c)(1)(A)(ii); Rosario-Delgado, 198 F.3d at 1355 (relying upon the reasoning in Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948)). Abraham does not dispute that he was previously convicted of a serious drug offense. Thus, the only question is whether Abraham's prior escape conviction qualifies as a "serious violent felony." It is not clear that Abraham has properly raised this issue on appeal, given that he does not actually cite to § 3559(c) nor to any precedents regarding the classification of escape as a serious violent felony. In his brief, Abraham states simply that "there is nothing inherently violent about the crime of escape," and that his escape involved merely walking away from a work detail, without the use of violence or the threat of violence. He further points out that the district court, in accepting the recommendation of the Presentence Investigation Report that Abraham's escape conviction qualifies as a serious violent felony, relied on a case, United States v. Gay, 251 F.3d 950, 952 (11th Cir. 2001), that interpreted the U.S. Sentencing Guidelines, not § 3359. These assertions, while conclusory, suffice to raise the issue of whether Abraham's prior escape conviction qualifies as a serious violent felony. Accordingly, before addressing whether the use of a predicate felony to enhance a defendant's sentence violates the Ex Post Facto Clause, we consider the merits of Abraham's § 3559 argument.

The definition of a "serious violent felony" under § 3559 encompasses

> any . . . offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical f involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F)(ii). Abraham concedes that escape is a second-degree felony punishable by fifteen years of imprisonment under Florida law. This Court has not specifically determined whether escape meets the remaining criteria set forth in this definition. In Gay, however, we held that a prior escape conviction constitutes a "crime of violence" under the career offender provisions of the Sentencing Guidelines even where the defendant's escape involves merely walking away from a non-secure facility. Section 4B1.2(a)(ii) of the Sentencing Guidelines define a "crime of violence" to include any offense that "involves conduct that presents a serious potential risk of physical injury to another." In Gay, we noted that "a district court only may inquire into the conduct surrounding a conviction if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself." Gay, 251 F.3d at 955 (internal citation and quotation marks omitted). Because the offense of escape does not involve such ambiguities "and does present the potential risk of violence, even when it involves a 'walk-away' from unsecured correctional facilities," we concluded that the escape conviction in Gay constituted a "crime of violence" under the career offender guideline. Id.

9

There is no meaningful distinction between the language of the career offender guideline – which refers to conduct that "presents a serious potential risk of physical injury to another" – and the language of § 3559 – which refers to conduct that "involves a substantial risk that physical force against the person of another may be used." Under the reasoning of Gay and the language of § 3559, accordingly, we find that Abraham's prior escape conviction qualifies as a "serious violent felony."

We have held that the use of predicate felonies to enhance a defendant's sentence does not violate the Ex Post Facto Clause because such enhancements do not represent additional penalties for earlier crimes, but rather stiffen the penalty for the latest crime committed by the defendant. United States v. Reynolds, 215 F.3d 1210, 1213 (11th Cir. 2000) (involving application of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and corresponding sentencing guideline, U.S.S.G. § 4B1.4).

Because predicate felonies may be used to enhance a defendant's sentence without violating the Ex Post Facto Clause, and because Abraham has been convicted of "one or more serious violent felonies and one or more serious drug offenses," the district court did not plainly err by sentencing Abraham to a mandatory term of life imprisonment under § 3559.

10

Abraham's last argument is that the district erred by denying Abraham a reduction for acceptance of responsibility and by enhancing his sentence because the victim was a government employee. With respect to these sentencing claims, we review the district court's findings of fact for clear error and its application of the Sentencing Guidelines de novo. United States v. Rendon, 354 F.3d 1320, 1329 (11th Cir. 2003).

Abraham argues summarily that his sentence should be vacated and remanded for imposition of a new sentence reflecting a reduction for acceptance of responsibility and without a victim-related adjustment. Abraham includes a factual recitation of the objections that he presented to the district court, without specifically rearguing the merits of his claims or providing any relevant caselaw. Because Abraham is subject to a statutory mandatory life sentence under § 3559, his arguments pertaining to the Sentencing Guidelines will not affect the imposition of his sentence. As such, we need not address these issues.

Upon review of the record, and upon consideration of the briefs of the parties, we find no reversible error. Accordingly, we affirm Abraham's sentence.

**AFFIRMED.**

11