[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 3, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11072
Non-Argument Calendar
_____

D. C. Docket No. 03-80052-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DELORIS MCCRAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 3, 2005)

Before BIRCH, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Deloris McCray appeals her concurrent 12-month and 1-day sentences for ten counts of willfully preparing false and fraudulent tax returns to the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7206(2). McCray argues on appeal that the district court committed due process or quasi-ex post facto violations[1] by sentencing her pursuant to United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), instead of pursuant to the pre-Booker mandatory United States Sentencing Guidelines ("federal guidelines"), as interpreted in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For the reasons set forth more fully below, we affirm.

A federal grand jury returned an indictment, which charged McCray with the above-referenced offenses, but did not include any tax loss amounts. McCray subsequently entered into a written plea agreement with the government, whereby she agreed to plead guilty as charged, and she acknowledged that her maximum statutory sentence for each charged offense was three years' imprisonment.

On February 24, 2004, during McCray's plea colloquy, the district court also personally advised McCray that her maximum statutory sentence for each of the

---

[1] The Ex Post Facto Clause of Article I, section 9 of the U.S. Constitution provides that "[n]o . . . ex post facto Law shall be passed." See U.S. Const. art. I, § 9, cl. 3; see also United States v. Simmons, 368 F.3d 1335, 1338 (11th Cir. 2004) (explaining that the Ex Post Facto Clause "prevents the [g]overnment from imposing additional penalties for crimes that have already been committed").

charged offenses was three years' imprisonment, and that these sentences could run consecutively. The government then proffered that, if the case had proceeded to trial, it would have proven that, on different occasions from tax years 1997 through 2000, McCray had prepared false tax returns. These offenses, which generally were the same, involved McCray's (1) understating taxpayers' earnings or withholding on their W-2 forms, and (2) preparing false 1040 tax forms. The government also explained that, after each taxpayer knowingly filed a false tax return, he or she paid McCray a fee of up to $3,000. At the conclusion of this proffer, McCray conceded that the facts were true, and she plead guilty as charged.

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), recommending that McCray be held responsible for both her charged and relevant conduct of preparing false tax returns, resulting in a total of 61 tax returns, a tax loss of $230,824, and a base offense level of 16 under U.S.S.G. § 2T4.1(K) (offense level applicable for offenses involving tax losses greater than $200,000, but less than $325,000).[2] The probation officer also

_____

[2] The PSI reflects that the 1998 Edition of federal guidelines was used to calculate McCray's offense level for conduct that occurred from 1997 through 2000 because, although district courts normally use the federal guidelines in effect on the date that a defendant is sentenced, the 1998 federal guidelines was more favorable to McCray than the current edition. See Simmons, 368 F.3d at 1338 (holding that, "although courts must presumptively apply the Guidelines as they exist at the time of sentencing, they may not do so where those Guidelines would lead to imposition of a harsher penalty than that to which the defendant was subject at the time of the offense. In such cases, the Guidelines applicable at the time of the offense must be applied").

3

recommended a two-level increase in this level, pursuant to U.S.S.G.

§ 2T1.4(b)(1)(B), because McCray was in the business of preparing or assisting in

the preparation of tax returns, and a three-level downward adjustment, pursuant to

U.S.S.G. § 3E1.1, for timely acceptance of responsibility. With an adjusted

offense level of 15, and a criminal history category of I, McCray's resulting

guideline range was 18 to 24 months' imprisonment.

McCray objected to being held responsible for both the charged and relevant

conduct. McCray also filed a supplemental objection to the PSI, arguing that,

pursuant to the Supreme Court's subsequent decision in Blakely, the district court

was barred from imposing a sentence falling outside the zero-to-six-month

sentencing range that resulted after calculating her base offense level as 6—the

level applicable for offenses involving $1,700 or less of tax loss.[3] In support of

this Blakely objection, McCray asserted that, because the tax loss amount was not

charged in her indictment, the government could not rely on it in calculating her

offense level. The government responded that the court should deny McCray's

Blakely objection because Blakely did not invalidate the federal guidelines.

On January 25, 2005, at sentencing, the court noted that, between the

---

[3] Alternatively, McCray argued that the court only should hold her responsible for a tax loss of $38, 740—the tax loss resulting from the ten offenses to which she plead guilty—resulting in a base offense level of 12.

preparation of McCray's PSI and sentencing, the Supreme Court in <u>Booker</u> had extended its holding in <u>Blakely</u> to the federal guidelines.  The court also stated that it intended to "essentially go forward as [it] ha[d] in the past and go through the computation of the guidelines and, once [it] ha[d] that as a background, . . . the court [could] exercise its discretion in fashioning a sentence."  McCray then reasserted her <u>Blakely</u> objection, arguing that (1) she should be sentenced "under the law set forth in <u>Blakely</u>," and (2) "there [was] a due process quasi <u>ex post facto</u> right that would limit the  [c]ourt's consideration in computing the guidelines to only those facts set forth in the charging document."

The government responded that the court should sentence McCray pursuant to <u>Booker</u>.  The government also asserted that <u>Booker</u> "d[id] not follow <u>Blakely</u> in the way the defense [was] trying to argue that it should have.  What [the] defense [was] trying to do [was take] the part of <u>Blakely</u> that it liked and anticipated and overla[y] that over <u>Booker</u>."  The government, however, explained that, if the court believed that McCray had been prejudiced by the change in the law, then it should allow her to withdraw her plea of guilty.

Agreeing with the government, the court stated that it was required "to apply the remedial provision in the <u>Booker</u> case," that is, "to consult the guidelines but to retain the discretion to impose whatever sentence the court ultimately conclude[d]

5

to be a reasonable sentence in light of the guidelines, and in light of all of the other factors set forth in [18 U.S.C. § 3553(a)]." Nevertheless, the court instructed McCray that it would allow her to withdraw her plea. After McCray replied that she did not wish to withdraw her plea, the court explained that she would be "subject to the law as it exists today." The government then proceeded to present testimony on the amount of tax loss resulting from McCray's relevant conduct.

During this presentation of evidence, McCray agreed to stipulate that her combined charged conduct and relevant conduct had involved filing 62 tax returns, had resulted in an amount of tax loss between $120,000 and $200,000, and supported a base offense level of 14. As part of this stipulation, however, both the parties and the court agreed that McCray was preserving her objection concerning "the ex post facto [implications] of Blakely." After noting that McCray had a total offense level of 14 and a guideline range of 15 to 21 months' imprisonment, the court discussed at length the sentencing factors contained in § 3553(a). The court ultimately sentenced McCray below the guideline range to concurrent sentences of 1 year' and 1 day' imprisonment, 1 year' supervised release, and a $1,000 special assessment fee.[4]

---

[4] In imposing McCray's sentence, the court again explained that it was acting "with full understanding of the range of discretion [afforded] by virtue of the [Supreme Court's] decision in the Booker case."

McCray argues on appeal that the district court erred in sentencing her pursuant to <u>Booker</u>, instead of pursuant to the pre-<u>Booker</u> mandatory federal guidelines, as interpreted in <u>Blakely</u>. McCray contends that the court's application of <u>Booker</u> at sentencing violated both her due process or quasi-<u>ex post facto</u> rights because it involved a retroactive application of the law, deprived her of fair warning of "increased" criminal penalties, and resulted in a more onerous sentence that she, otherwise, would have received. McCray also asserts that, although the Supreme Court held in <u>Booker</u> that cases generally should be applied to appeals pending when <u>Booker</u> was decided, this holding should not be "forced" upon her. McCray concludes that we should remand her case for the district court to sentence her under the mandatory federal guidelines, as interpreted in <u>Blakely</u>, which will result in a sentence based upon only the conduct for which she was indicted and to which she plead guilty.[5]

---

[5] Although the government has responded that McCray's guilty plea was free and voluntary, McCray has not challenged her plea on appeal. Thus, we deem any arguments on it abandoned. <u>See</u> <u>United States v. Levy</u>, 416 F.3d 1273, 1275 (11th Cir. 2005) (holding that an argument not raised in an appellant's opening brief is deemed waived). Regardless, McCray's plea colloquy does not reflect that the court erred in accepting her plea. <u>See</u> <u>United States v. Brown</u>, 117 F.3d 471, 477 (11th Cir. 1997) (explaining that "a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise" (quotation omitted)). Indeed, when given the opportunity at sentencing to withdraw her plea, McCray declined it. <u>See</u> <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, ___, 124 S.Ct. 2333, 2340, 159 L.Ed.2d 157 (2004) (holding that a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Fed.R.Crim.P. 11, must show "a reasonable probability that, but for the error, he would not have entered the plea").

McCray properly preserved her <u>Blakely</u> claim in the district court by citing to <u>Blakely</u> in her supplemental objection to the PSI and at sentencing. <u>See</u> <u>United States v. Dowling</u>, 403 F.3d 1242, 1246 (11th Cir. 2005) (concluding that a defendant either must (1) refer to the Sixth Amendment; (2) <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), or another related case; (3) assert the right to have the jury decide the disputed fact; or (4) raise a challenge to the role of the judge as factfinder to preserve a <u>Blakely</u>/<u>Booker</u> claim). Thus, we review it <u>de novo</u>, but reverse only for harmful error. <u>See</u> <u>United States v. Paz</u>, 405 F.3d 946, 948 (11th Cir. 2005). Similarly, the preserved constitutional issues of whether McCray's due process rights were violated and whether her sentences were imposed in violation of the Ex Post Facto Clause are questions of law that are reviewed <u>de novo</u>. <u>See</u> <u>United States v. Noel</u>, 231 F.3d 833, 836 (11th Cir. 2000) (due process claim); <u>United States v. Abraham</u>, 386 F.3d 1033, 1037 (11th Cir. 2004) (ex post facto claim), <u>petition for cert. filed</u>, (U.S. Feb. 16, 2005) (No. 04-9334).

To the extent McCray is rearguing her due process and quasi-<u>ex post facto</u> challenges to being sentenced pursuant to <u>Booker</u>, "[t]he <u>ex post facto</u> clause prohibits the enactment of statutes which . . . make more burdensome the punishment for a crime, after its commission . . . ." <u>Abraham</u>, 386 F.3d at 1037

8

(quotation omitted). "[T]he following two elements must be present in order for a court to find an ex post facto violation: (1) the law must be retrospective, meaning it applies to events occurring before its enactment; and (2) the offender must be disadvantaged by it." Id. (citation omitted). Although the Ex Post Facto Clause forbids both legislative creation of new criminal liability and legislative increases in punishment after the event, it does not apply of its own force to changes worked by judicial decisions, such as Booker. See Rogers v. Tennessee, 532 U.S. 451, 460, 121 S.Ct. 1693, 1699, 149 L.Ed.2d 697 (2001). Nevertheless, the Supreme Court in Rogers clarified that the Due Process Clause encompasses the ex post facto principles of fair warning. Id., 532 U.S. at 460-61, 121 S.Ct. at 1699-1700.[6]

Applying this analysis to McCray's challenge on appeal, we begin with the Supreme Court's holding in Apprendi that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. at 2362-63. Prior to McCray's sentencing, the Supreme Court revisited that rule in Blakely, in the context of

---

[6] The Rogers Court cited in support to Bouie v. City of Columbia, 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964), wherein the Supreme Court held that judicial enlargement of a criminal statute, applied retroactively, violated the Due Process Clause because it was unforeseeable and, thus, like an ex post facto law. See Rogers, 532 U.S. at 468, 121 S.Ct. at 1703.

9

Washington state's sentencing guideline scheme, and clarified that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose <u>solely on the basis of the facts reflected in the jury verdict or admitted by the defendant</u> . . .. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose <u>without</u> any additional findings." <u>Blakely</u>, 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis in original). Applying these principles, the Supreme Court held that Blakely's sentence—which was enhanced under the state guidelines based on the court's additional finding by a preponderance of the evidence that Blakely committed his kidnaping offense with deliberate cruelty—violated the Sixth Amendment. <u>Id.</u> at ___, 124 S.Ct. at 2534-38.

Although the <u>Blakely</u> Court explicitly remarked in a footnote that "[t]he [f]ederal [g]uidelines are not before us, and we express no opinion on them," <u>id.</u> at ___ n.9, 124 S.Ct. at 2538 n.9, the Supreme Court, again prior to McCray's sentencing hearing, decided in <u>Booker</u> that "no distinction of constitutional significance [existed] between the [federal guidelines] and the Washington procedures at issue" in <u>Blakely</u>. <u>Booker</u>, 543 U.S. at ___, 125 S.Ct. at 749. Resolving the constitutional question left open in <u>Blakely</u>, the Supreme Court held in <u>Booker</u> that the mandatory nature of the federal guidelines rendered them

10

incompatible with the Sixth Amendment's guarantee to the right to a jury trial. Id. at \_\_\_,125 S.Ct. at 749-51. In extending its holding in Blakely to the federal guidelines, the Court explicitly reaffirmed its rationale in Apprendi that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at \_\_\_, 125 S.Ct. at 756.

In a second and separate majority opinion, the Court in Booker also concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the federal guidelines advisory only. Id. at \_\_\_, 125 S.Ct. at 764. Thus, the guideline range is now advisory; it no longer dictates the final sentencing result but instead is an important sentencing factor that the sentencing court is to consider, along with the factors contained in 18 U.S.C. § 3553(a). Id. at \_\_\_, 125 S.Ct. at 764-65.

In United States v. Duncan, 400 F.3d 1297 (11th Cir.), petition for cert.

filed, (U.S. July 20, 2005) (No. 05-5467), we reviewed a defendant's similar argument that Booker's remedial provisions, if applied retroactively, would increase the sentence authorized by the jury's verdict and, therefore, constitute an ex post facto law in violation of the defendant's due process rights. Id. at 1306-07. Examining whether the Booker opinion would violate the due process principles of fair warning, we determined that, when the appellant committed the offense of conviction, "the recognized state of the law looked to the United States Code as establishing maximum sentences." Id. at 1307-08. We further explained that, before Blakely was decided, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within a defendant's statutory maximum sentence. Id. at 1308. Thus, we concluded that the defendant, who was sentenced within his statutory range, had sufficient warning to satisfy the due process concerns articulated in Rogers. Id.[7]

In the instant case, both McCray's plea agreement and the district court correctly advised her that her maximum statutory sentence was three years' imprisonment for each offense. See 26 U.S.C. § 7206(2) (setting three-year

---

[7] As persuasive authority, the First, Fifth, Seventh, Ninth, and Tenth Circuits also have rejected in published opinions due process challenges, as informed by ex post facto principles, to district court's impositions of sentences under the Supreme Court's remedial decision in Booker. See United States v. Lata, 415 F.3d 107, 110-13 (1st Cir. 2005); United States v. Scroggins, 411 F.3d 572, 575-76 (5th Cir. 2005); United States v. Jamison, 416 F.3d 538, 539-40 (7th Cir. 2005); United States v. Dupas, 419 F.3d 916, 919-21 (9th Cir. 2005), and United States v. Rines, 419 F.3d 1104, 1106-07 (10th Cir. 2005).

12

maximum statutory sentence for offense of preparing a false tax return).  The court

also advised McCray that her sentences could be imposed consecutively, resulting

in a total sentence of 30 years' imprisonment.  See 18 U.S.C. § 3584(a) (providing

that sentences may run consecutively if multiple terms of imprisonment are

imposed on a defendant at the same time).  Thus, similar to the appellant in

Duncan, McCray had fair warning that she could receive up to 30 years'

imprisonment for her offenses, and her due process rights were not violated when

the court sentenced her to 1 year' and 1 day' imprisonment.  See Duncan, 400 F.3d

at 1306-08.  Moreover, to the extent McCray has attempted to distinguish Duncan

by arguing that the appellant in that case, who was sentenced before Blakely, did

not reasonably rely on it, McCray, similar to the appellant in Duncan, committed

the instant offenses from 1997 through 2000—well before Blakely was decided.

See United States v. Bordon, No. 04-10654, slip op. at 3419 (11th Cir. Aug. 25,

2005) (holding that the ex post facto clause "operates not to protect an individual's

right to less punishment, but rather as a means of assuring that an individual will

receive fair warning of criminal statutes and the punishments they carry").

In addition, McCray has misconstrued the Supreme Court's holding in

Blakely, along with failing to show that she was disadvantaged by the district

court's treatment of the federal guidelines as discretionary.  As discussed above,

the Supreme Court in Blakely, in the context of Washington state's sentencing guideline scheme, determined that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." See Blakely, 542 U.S. at ___, 124 S.Ct. at 2537. We, however, have determined that a factual stipulation is the equivalent of a jury finding on a fact because it takes the issues away from the jury. See United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (concluding that a sentence enhancement based on drug quantity did not violate Booker where the defendant did not dispute, and in fact conceded, the factual accuracy of his PSI).

Because McCray stipulated at sentencing that she was responsible for an amount of tax loss of between $120,000 and $200,000, the court did not err in relying on this fact in determining McCray's guideline range, Thus, even if the district court had not increased McCray's offense level by two levels, pursuant to § 2T1.4(b)(1)(B), based on the fact that McCray was in the business of preparing or assisting in the preparation of tax returns, McCray's total offense level would have been 13,[8] and her sentence of 1 year' and 1 day' imprisonment would have

---

[8] Although the district court adjusted McCray's offense level of 17 downwards 3 levels based on her timely acceptance of responsibility, a defendant may not receive an additional 1-level adjustment for a timely plea unless her adjusted offense level is 16 or greater. See U.S.S.G. § 3E1.1(b).

fallen within her resulting guideline range of 12 to 18 months' imprisonment. Moreover, in following <u>Booker</u>'s remedial holding and treating the federal guidelines as advisory, the district court sentenced McCray below her resulting guideline range of 15 to 21 months' imprisonment.

Accordingly, we conclude that the district court's sentencing of McCray pursuant to <u>Booker</u> did not result in either a due process or an <u>ex post facto</u> violation. We, therefore, affirm McCray's sentence.

**AFFIRMED.**