[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11427
Non-Argument Calendar

_____

D. C. Docket No. 05-20419-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FREDRIC BLAIR LAYNE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 12, 2007)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Fredric Blair Layne appeals his convictions for wire fraud,

in violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349.  After review, we affirm Layne's convictions and sentences.

## I.  BACKGROUND

### A.  Co-defendant Fails to Appear

Layne and a co-defendant, Michael Scarpon, were indicted on charges of wire fraud and conspiracy to commit wire fraud.  Both pled not guilty.  On the morning of the ninth day of trial, co-defendant Scarpon failed to appear.

The government reported to the district court that Scarpon's wife had stated that Scarpon had driven himself from their home in New Port Richey to Miami for trial that morning.  Noting that Scarpon previously had claimed to be unable to drive and that Scarpon's wife had accompanied him to court every day of the trial, the government contended that Scarpon appeared to have fled.

The district court recessed until 1:30 p.m. to give Scarpon time to arrive.  At 1:30 p.m., Scarpon had not appeared. The government reported that its efforts to locate Scarpon were unsuccessful.  The district court sent the jury home without informing the jury of Scarpon's absence and without the jury being brought into the courtroom where it might observe Scarpon's absence.

### B.  Motion for a Mistrial and First Jury Instruction

The next day, Scarpon still did not appear.  The government reported that it

2

had not located Scarpon, but had spoken with Scarpon's wife, who had spoken to her husband on the telephone at 5:00 p.m. the day before. The government argued that Scarpon should be treated as a fugitive and that his trial should proceed in absentia.

Layne moved for a mistrial, arguing that the inference of guilt from Scarpon's flight could carry over to Layne. The district court denied Layne's motion and trial proceeded against Scarpon in his absence. Without objection from Layne, the district court instructed the jury that "Mr. Scarpon is not here. Notwithstanding that, this case will continue against Mr. Scarpon and Mr. Layne."

## C.    Scarpon's Suicide and Second Jury Instruction

Approximately an hour later, the district court learned that Scarpon had committed suicide. Layne's counsel explained that Layne and Scarpon had been "very close" and requested a several-day continuance. Noting that only a few hours of trial remained, the district court denied the request, but adjourned for the day. Without objection, the district court informed the jury that legal matters had come up and instructed the jury not to speculate about them.

After the jury was dismissed, the district court discussed with the parties how Scarpon's absence should be addressed. Layne renewed his motion for a mistrial, arguing again that the jury would speculate that Scarpon had fled and infer

3

that both Scarpon and Layne were guilty.  The district court noted that the jury

could also draw the inference that because Layne had not fled, he was not guilty.

The district court denied Layne's motion for a mistrial.

The district court then discussed with Layne's counsel, Thomas Almon, and

the government's counsel, Christopher Garcia, the jury instruction to be given

about Scarpon's absence.  The district court proposed that it should instruct the

jury that Scarpon was no longer a defendant, that the case would proceed against

Layne only and that the jury should not speculate about the reason for Scarpon's

absence.  In response, Layne's counsel was careful to preserve his objection to the

district court's denial of his motion for a mistrial, but agreed that there was no

better way to formulate the district court's proposed jury instruction.[1]

---

[1]The colloquy reads as follows:

> THE COURT: Why don't I just draft something up that basically says that from this point forward, this case is proceeding only as against the defendant, Fredric Blair Layne.  The charges against the defendant, Michael Scarpon, are no longer yours for your consideration, are not before you for decision.  Do not concern yourselves with this development, and do not speculate about it.  Something like that. How's that?
> MR. GARCIA:  That sounds fair, Your Honor.
> THE COURT:  How is that?
> MR. ALMON:  You've got to give one.
> THE COURT:  If I don't send you home with a letter of commendation for your client, what is your next?
> MR. ALMON:  The 11th Circuit sends down language that says, well, then you agreed to a limiting instruction.
> THE COURT:  I know that you are not agreeing to it.  What I'm saying is, do you have a better suggestion?
> MR. ALMON:  No, Judge.  I have been through this before in terms of instruction coming from the Court.
> THE COURT:  I am trying to be fair.

4

Before trial resumed the following day, the district court reiterated the planned instruction, and Layne's counsel indicated that the instruction was "fine" and that he had "made [his] record yesterday." The district court instructed the jury that "[f]rom this point forward this case is proceeding only against the defendant, Fredric Blair Layne. The charges against the defendant, Michael Scarpon, are no longer before you. Do not concern yourself with this development and do not speculate about it."

The trial proceeded and the government rested its case. The district court advised Layne of his right to testify. Layne responded that he did not want to testify. Layne's counsel called two witnesses and rested Layne's case. The jury convicted Layne on both counts.

At sentencing, Layne was represented by new counsel. Layne argued that he had not been of sound mind after Scarpon's suicide, which influenced his decision not to testify, and that he and Scarpon had both planned to testify. Layne also

---

MR. ALMON: I know you are.
THE COURT: Sometimes I don't always get it; and I don't, I want you to tell me this would be a better way of doing it.
MR. ALMON: No, I can't think of a better way.
THE COURT: Okay. Then that's what we'll do.
From this point forward, this case is proceeding only against the defendant, Fredric Blair Layne. The charges against the defendant, Michael Scarpon, are no longer before you. Do not concern yourself with this development and do not speculate about it.

argued that his trial counsel had been ineffective. The district court rejected these arguments and sentenced Layne to 135 months' imprisonment on both counts to run concurrently. Layne filed this appeal.

## II. DISCUSSION

### A.      Motion for Mistrial

On appeal, Layne argues that the district court erred in denying his motion for a mistrial.[2]

A defendant is entitled to a mistrial upon a showing of substantial prejudice. United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). "The decision to grant a mistrial is within the discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Saget, 991 F.2d 702, 707-08 (11th Cir. 1993). "When a curative instruction has been given to address some improper and prejudicial evidence, we will reverse [the denial of a motion for a mistrial] only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." United States v. Harriston, 329 F.3d 779, 787 n.4 (11th Cir. 2003) (quotation marks omitted). Such prejudice occurs when a significant possibility exists that the evidence had a substantial impact upon the jury's verdict. United States v. Tenorio-Angel, 756

---

[2]We review a district court's denial of a motion for a mistrial for an abuse of discretion. United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001).

F.2d 1505, 1512 (11th Cir. 1985).

Layne argues that he was prejudiced because the jury was left to speculate about the reason for Scarpon's sudden absence at trial and could have inferred that Scarpon had pled guilty. We have determined that a district court's proper cautionary instruction was sufficient to cure any potential prejudice to a defendant caused by a co-defendant's sudden absence during trial. See, e.g., United States v. Carrazana, 921 F.2d 1557, 1568 (11th Cir. 1991) (involving sudden absence of six of eight defendants after they pled guilty during trial); see also United States v. DeLucca, 630 F.2d 294, 299-300 (5th Cir. 1980)[3] (suggesting that a curative instruction would have avoided any potential prejudice when several defendants were dismissed during trial, but concluding that the failure to give one sua sponte was not plain error and affirming denial of mistrial).[4]

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the Fifth Circuit decided before October 1, 1981.

[4] We found only one case with similar facts in our Circuit. In United States v. Goodman, a co-defendant committed suicide during the third week of trial, which was then reported in a local newspaper. 605 F.2d 870, 881 (5th Cir. 1979). The defendant moved for a mistrial based on the publicity about the co-defendant's suicide. Id. The defendant did not make the argument Layne makes here–that the co-defendant's sudden absence was prejudicial. We concluded in Goodman that the publicity about the suicide did not require a mistrial because the newspaper article was neither inflammatory nor probative of guilt and there was no evidence the jury had read the article. Id. at 882. The Goodman court also rejected the defendant's argument that the co-defendant's suicide was tantamount to a confession because there was no evidence of the reason the co-defendant committed suicide. Id. at 883. Although Goodman is not directly on point, we note that here, as in Goodman, there is no showing that the jury was aware that Scarpon had committed suicide. Nor is there any evidence as to the reason Scarpon committed suicide.

Here, contrary to Layne's assertions, the jury was not left free to speculate about the reason for Scarpon's sudden absence from trial or to infer from it that Scarpon was guilty. The jury was only aware of Scarpon's absence for a short time before the district court gave a curative instruction admonishing them not to speculate about the reason for it. Specifically, on the morning of the tenth day of trial, the jury was instructed that, although Scarpon was absent, the case would proceed against both him and Layne. The trial proceeded for approximately an hour before the district court was advised of Scarpon's suicide and adjourned proceedings for the rest of the day. The next morning, the district court instructed the jury that, although the case against Layne was to proceed, the charges against Scarpon were no longer before the jury and the jury should not speculate as to the reason for this development. We presume the jury followed the district court's instructions and did not concern itself further with Scarpon's absence or the charges against Scarpon. See United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir. 1996) (explaining that we presume that the jury follows a district court's instructions).

Under the factual circumstances here and given the curative instruction delivered the next day, we cannot say that a significant possibility exists that Scarpon's unexplained absence had a substantial impact on the jury's verdict or

8

that the district court abused its discretion in denying Layne's mistrial motion.

Layne also argues for the first time that he was prejudiced by a confluence of "aggravating circumstances" at the time of Scarpon's suicide that, taken cumulatively, required a mistrial. According to Layne, he and Scarpon planned a joint defense and intended to testify. However, when Scarpon committed suicide, the joint defense fell apart because half the defense team and the key witness were gone. Layne claims his trial counsel could not adjust his defense strategy in the short period of time given. Meanwhile, Layne, who was devastated by the death of his close friend and business partner, was "so demoralized" that he followed his trial counsel's advice not to testify. Layne also contends that his trial counsel was unprepared for trial and was unable to understand the sophisticated financial transactions involved. Furthermore, the majority of the government's evidence was directed at Scarpon rather than Layne. Layne alleges that cumulatively these circumstances created "almost a total absence of any defense."

Layne did not raise these arguments in the district court in support of his motion for a mistrial and thus plain error review applies.[5] See United States v. Abraham, 386 F.3d 1033, 1036 (11th Cir. 2004) (applying plain error review when

---

[5]Layne emphasizes that he raised these issues at sentencing. However, Layne did not raise these issues in support of his motion for mistrial and, thus, they are entitled only to plain error review.

the defendant raised a new basis for the mistrial on appeal). For several reasons, we cannot say the district court plainly erred in failing to declare a mistrial under the circumstances of this case.

First, prior to Scarpon's suicide, Layne's counsel indicated to the district court that Layne did not intend to testify at trial and that counsel had not prepared a defense based on Layne testifying. Layne's counsel indicated several times during the trial that the defense would consist of "two brief witnesses," and, indeed, only two witnesses were called by Layne. Thus, the district court had no occasion to believe that Layne's defense strategy or his decision whether to testify had been altered by Scarpon's suicide.

Second, to the extent that much of the government's evidence was directed against Scarpon, the district court specifically instructed the jury that Scarpon's charges were no longer before it and that the case was now proceeding against only Layne.

Third, on the first day of trial, the district court considered and denied Layne's request to replace his trial counsel for allegedly failing to prepare for trial. To the extent Layne is raising a claim of ineffective assistance of his trial counsel, we decline to address it. See United States v. Verbitskaya, 406 F.3d 1324, 1337 (11th Cir. 2005) ("Except in the rare instance when the record is sufficiently

developed, we will not address claims for ineffective assistance of counsel on direct appeal."), cert. denied, 546 U.S. 1096, 126 S. Ct. 1095 (2006).

## B.    Jury Instructions

For the first time on appeal, Layne also argues that the district court's instructions to the jury about Scarpon's absence were erroneous.[6] Because Layne did not raise these arguments in the district court, our review of this issue is also limited to plain error. See United States v. Prather, 205 F.3d 1265, 1271 (11th Cir. 1999).[7]

Layne challenges the first instruction the district court gave after Scarpon had not appeared for trial, but before the district court learned Scarpon had died. At that time, the district court did not know whether Scarpon might reappear. Thus, the district court instructed the jury that the case would proceed against both defendants despite Scarpon's absence.

Layne argues that this first instruction was declarative rather than curative

---

[6]Layne's initial brief claims in the "Statement of the Issues" that he was deprived of his Fifth Amendment rights to a fair trial. However, the initial brief does not provide any analysis or citation to supporting legal authority and merely reiterates this claim in conclusory fashion. Because Layne has failed to develop, and thus has abandoned, any argument that his Fifth Amendment rights were violated, we do not address it. See Greenbriar, Ltd v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (explaining that an issue identified in the statement of the case, but not argued anywhere else in the brief, is abandoned).

[7]For a jury instruction to be plain error it must "be a plainly incorrect statement of the law" and "'probably [have been] responsible for an incorrect verdict, leading to substantial injustice . . . .'" United States v. Prather, 205 F.3d 1265, 1271 (11th Cir. 2000) (quoting in part Montgomery v. Noga, 168 F.3d 1282, 1294 (11th Cir. 1999)).

11

and served only to emphasize Scarpon's absence to the jury. However, the district court's second instruction, given the next day–that the charges against Scarpon were no longer before them and that the jury should not speculate about the reason for Scarpon's absence–was sufficient to cure any alleged prejudice to Layne. At a minimum, the district court's first instruction was certainly not plain error.

Layne contends that the second jury instruction was incomplete and should have: (1) advised the jury that Scarpon had been in poor health and had passed away; (2) instructed the jury to consider the evidence against Layne separately; and (3) admonished the jury that Scarpon's absence (or death) should have no bearing on the question of Layne's guilt or innocence. The first part of this instruction is problematic because it gives an impression that is not wholly consistent with the truth. The third part was essentially already contained in the second instruction that the charges against Scarpon were no longer before them and the jury should not concern itself with this development. The instruction essentially conveyed the message that Scarpon's absence was of no consequence, the jury should not speculate about it and the jury's task was to focus on Layne.

As to the second part, the district court's overall charge to the jury made it clear that the government had to carry the burden to prove beyond a reasonable doubt that Layne committed the offenses charged and that if the government failed

12

to do so, the jury was required to find Layne not guilty. See Prather, 205 F.3d at 1270 (explaining that district courts have "broad discretion in formulating jury instructions provided that the charge as a whole accurately reflects the law and the facts" (quotation marks omitted)). These instructions provided further context for the instructions relating to Scarpon's absence from trial, all of which we presume the jury followed.

In any event, Layne's counsel stated at trial that the district court's proposed instruction was "fine" and that he could not think of a better way to fashion the instruction.[8] Accordingly, Layne waived the right to challenge the form of the second jury instruction on appeal. See United States v. Silvestri, 409 F.3d 1311, 1337 (11th Cir.), cert. denied, 546 U.S. 1048, 126 S. Ct. 772 (2005) (explaining that, where the defendant indicates the proposed instruction is acceptable, the invited error doctrine precludes review).[9]

---

[8]On appeal, Layne argues that his trial counsel preserved Layne's objection to the language of the second curative instruction along with his objection to the denial of his mistrial motion. We disagree. It is clear from the record that Layne's counsel, while careful to preserve his objection to the denial of the mistrial motion, maintained that, in the absence of a mistrial, a curative instruction was required and found the district court's proposed curative instruction acceptable. To preserve an objection to the form of the curative instruction, it was incumbent upon Layne's counsel to raise any alleged deficiencies with the district court.

[9]We also reject Layne's argument that Scarpon's absence was tantamount to a co-defendant's confession or guilty plea and required an instruction similar to the one given in Bruton v. United States, 391 U.S. 123, 125 n.2, 88 S. Ct. 1620, 1622 n.2 (1968). We do so for several reasons, including the fact that Bruton does not address whether curative instructions are necessary when a co-defendant is suddenly absent from trial, the issue presented in this case. Furthermore, "the fact that a co-conspirator's guilty plea was made known to the jury will rarely result in plain error even

13

We reject Layne's alternative argument that the second jury instruction was untimely. The second jury instruction was given the second day after Scarpon failed to appear, one day after the first jury instruction had been given, and as soon as the district court learned that Scarpon's absence was due to his death. Until that time, the district court did not know whether Scarpon might quickly reappear or be tried in absentia as a fugitive. Under the circumstances, the timing of the district court's curative instruction was not plain error.

We affirm Layne's convictions and sentences.

**AFFIRMED.**

---

when no cautionary instruction is given." United States v. Carrazana, 921 F.2d 1557, 1568 (11th Cir. 1991). The district court's failure to include a Bruton-type instruction, even assuming it was error, would not be plain error. See United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000) (explaining that an error is not plain unless it is clear under the current law).