[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-13199

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 7, 2004
THOMAS  K. KAHN
CLERK**

D.C. Docket No. 03-00007-CR-4

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

ANTHONY SIMMONS
a.k.a. Michael Arthur Green,
a.k.a. Antonio White, a.k.a. Antonio Green,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(May 7, 2004)**

Before TJOFLAT and HILL, Circuit Judges, and MILLS[*], District Judge.

_____

[*] Honorable Richard Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

TJOFLAT, Circuit Judge:

I.

On October 25, 2002, Anthony Simmons was arrested for violating probation. At the time, he was carrying a loaded 9mm semiautomatic handgun and over two dozen small bags of cocaine. Simmons pled guilty to carrying a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i)[1] in exchange for having several other charges against him dropped. This statute carries a mandatory minimum sentence of five years (60 months). See also U.S.S.G. § 2K2.4(a)(2) (2001) ("[I]f the defendant . . . was convicted of violating . . . Section 924(c) . . . of title 18, United States Code, the guideline sentence is the minimum term of imprisonment required by statute.").

The district court chose to make an upward departure beyond this 60 month period and sentenced Simmons to 160 months in prison. The court explained that Simmons "has at least two prior felon convictions for a crime of violence or a

---

[1] 18 U.S.C. § 924(c)(1)(A) provides:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years . . . .

controlled substance offense that would have resulted in a career offender designation." The court noted that, had the defendant been eligible to be sentenced as a career offender, "his guideline range of imprisonment would have been 262 to 327 months." Consequently, "[b]ased upon [the] defendant's prior convictions, two of which would have resulted in a career offender designation," the judge concluded that an upward departure of an additional 100 months was warranted.

On appeal, Simmons makes three arguments. First, he claims that the district court erred in considering the 2002 Guidelines, rather than basing his sentence entirely on the 2001 Guidelines. Second, he contends that the district court should not have made an upward departure. Finally, he argues that even if an upward departure was warranted, the extent of this particular upward departure was clearly unreasonable. We reject these claims and affirm his sentence.

## II.

We begin by determining whether the sentencing court should have applied the 2001 Guidelines, which were in effect at the time Simmons committed his offense, or the 2002 Guidelines, which were in effect on the date of his sentencing. Federal law requires judges presumptively to apply the sentencing Guidelines as they exist at the time of sentencing. 18 U.S.C. § 3553(a) ("The court, in

determining the particular sentence to be imposed, shall consider . . . the kinds of sentence and the sentencing range . . . set forth in the guidelines . . . that . . . are in effect on the date the defendant is sentenced . . . .").  The Constitution's Ex Post Facto Clause, however, prevents the Government from imposing additional penalties for crimes that have already been committed.  See U.S. Const. art. I. § 9, cl. 3 ("No . . . ex post facto Law shall be passed."); Calder v. Bull, 3 U.S. (3 Dall.) 386, 390 (1798) (holding that "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" is an "ex post facto law[], within the words and the intent of the prohibition"). Consequently, although courts must presumptively apply the Guidelines as they exist at the time of sentencing, they may not do so where those Guidelines would lead to imposition of a harsher penalty than that to which the defendant was subject at the time of the offense.  In such cases, the Guidelines applicable at the time of the offense must be applied.  United States v. Simon, 168 F.3d 1271, 1272 n.1 (11th Cir. 1999) ("We apply the version of the Sentencing Guidelines and commentary in effect on the date of sentencing, unless a more lenient punishment would result under the Guidelines version in effect on the date the offense was committed." (citation omitted)); see also U.S.S.G. § 1B1.11(b)(1) (2001) ("If the court determines that use of the Guidelines Manual in effect [when] the defendant

is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.").

In this case, both parties agree that the 2001 Guidelines would result in a more lenient sentence for Simmons than the 2002 Guidelines. Consequently, the 2001 Guidelines are applicable. Because the presentence investigation report was based on, and the judge applied, the 2001 Guidelines, no error was committed in this regard.

III.

Having identified the correct edition of the Guidelines to apply, we now turn to whether an upward departure was warranted in this case. When a defendant claims that an upward departure "is not authorized under [the Sentencing Reform Act of 1984]; or is not justified by the facts of the case," 18 U.S.C. § 3742(e)(3)(B)(ii)-(iii), we review the district court's factual findings for clear error, id. § 3742(e)(4), and its legal conclusions de novo, United States v. Williams, 340 F.3d 1231, 1234 n.8 (11th Cir. 2003) ("Because the statute is silent as to the standard of review for 'pure' questions of law, we review them under our customary de novo standard."). We begin in Section A by examining general

principles applicable to upward departures; Section B applies these principles to the instant case.

A.

To determine the propriety of the district court's upward departure, it is necessary to identify the type of departure it was and examine the restrictions our precedents place on such departures. Departures are classified as guided or unguided. A guided departure is one based on a factor about an offense or a defendant that the Guidelines expressly discuss. United States v. Smith, 289 F.3d 696, 710 (11th Cir. 2002) ("Guided departures are those departures specifically provided for in the Guidelines."). There are four ways in which the Guidelines might discuss a particular factor. First, the factor might be one that a guideline, or a policy statement or application note in the Guidelines, encourages courts to consider that has not already been taken into account by the specific guideline under which the defendant is being sentenced. Encouraged factors may always be used as the basis for upward departures under such circumstances. See, e.g., United States v. Kimball, 291 F.3d 726, 734 (11th Cir. 2002); United States v. Lewis, 115 F.3d 1531 (11th Cir. 1997). For example, U.S.S.G. § 5K2.3 (2001) encourages courts to make upward departures if the victims of a crime suffer unusually serious psychological injuries. The guideline establishing the offense

6

levels for eavesdropping and other invasion-of-privacy offenses, U.S.S.G. § 2H3.1 (2001), does not provide for enhancements based on such considerations or otherwise take this factor into account. Consequently, if the victim of such an offense suffers unusually severe psychological injury, a district court is fully justified in imposing an upward departure.

Second, the Guidelines may expressly encourage courts to base upward departures on a particular factor, but that factor may already have been taken into account by the guideline under which the defendant is being sentenced. For example, U.S.S.G. § 2A2.2 (2001) sets base the offense level for aggravated assault at 15, and directs courts to add an additional 5 offense levels if a firearm is discharged during the crime.[2] Section 5K2.6 encourages courts to grant an upward departure where the defendant uses a weapon in the commission of a crime. Although this section makes the use of a firearm an encouraged basis for an upward departure, it is a factor that the underlying aggravated assault guideline, § 2A2.2, already takes into consideration. Similarly, another guideline encourages courts to depart upwards if "significant physical injury resulted" from a crime. U.S.S.G. § 5K2.2 (2001). Because the crime of aggravated assault is itself based

---

[2] Because this enhancement is mandatory, it is referred to as an "upward adjustment" or "upward enhancement" and is not considered an upward departure.

on the infliction of serious physical injury, this encouraged factor is already taken into account by the underlying guideline. A district court may grant an upward departure in cases such as these, based on an encouraged factor that is already contemplated by the Guidelines under which the defendant is being sentenced, only where the factor is "present to an exceptional degree" not contemplated by the Guidelines. Lewis, 115 F.3d at 1538.

Third, a factor might be a discouraged basis for departure. For example, U.S.S.G. § 5H1.4 (2001) states, "Physical condition or appearance, including physique, is not ordinarily relevant in determining whether" a departure may be warranted. As with encouraged factors that have already been taken into account by an underlying guideline, a discouraged factor may be used as the basis for an upward departure only if "it is present to an exceptional degree." Lewis, 115 F.3d at 1538; see also United States v. Kim, No. 03-11016, 2004 U.S. App. LEXIS 5858, at *9 n.5 (11th Cir. Mar. 30, 2004) ("The difference between discouraged factors and encouraged factors already taken into account by the applicable guideline is purely semantic, not legal.").

Finally, there are some factors that district courts are simply prohibited from using as the basis for an upward departure. For example, U.S.S.G. § 5K2.19 (2001) states, "Post-sentencing rehabilitative efforts, even if exceptional,

undertaken by a defendant . . . are not an appropriate basis for a downward

departure when resentencing the defendant for that offense." Departures based on

such factors are automatically invalid. United States v. Hoffer, 129 F.3d 1196,

1201 (11th Cir. 1997) ("If the district court has relied upon a forbidden factor, it

necessarily has abused its discretion.").

While the Guidelines address several of the most common characteristics of

offenses and defendants, there is an almost endless variety of other circumstances

or considerations that might warrant upward departures. See U.S.S.G. ch. 1,

pt. A(4)(b) (2001) ("[I]t is difficult to prescribe a single set of guidelines that

encompasses the vast range of human conduct potentially relevant to a sentencing

decision."). A departure based on a factor not expressly discussed by the

Guidelines is called an "unguided departure."[3] A court may make an unguided

---

[3] Our circuit's distinction between "guided" and "unguided" departures is not entirely consistent with that established by the Guidelines commentary. According to the commentary, a guided departure is one in which the Guidelines expressly recommends the amount by which the court should depart. An unguided departure, in contrast, is one in which the Guidelines either recommend a particular factor as a possible basis for departure without specifying the amount by which the court should depart, or are silent as to whether a factor should be used as a basis for departure. See U.S.S.G. ch. 1, pt. A(4)(b). The only real distinction between our circuit's use of these terms and the Guidelines' use of these terms is that where the Guidelines specify a factor as being an appropriate basis for departure without recommending a particular amount by which the court should depart, we would designate it as being a "guided" departure (because the basis for departure is specified in the Guidelines) while the Guidelines would term it an "unguided" departure (because the Guidelines do not provide a recommendation as to the extent of the proposed departure). It is unclear that this variation in terminology actually has any legal effect. Nevertheless, under our prior panel rule, we are bound to abide by the definitions of these terms cultivated in our precedents. See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs., 344 F.3d

departure whenever it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b)(1); <u>see also</u> U.S.S.G. § 5K2.0 (2001) ("Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is warranted rests with the sentencing court on a case-specific basis."). Because, as discussed later, the district court's departure may be justified as a guided departure, we need not further discuss unguided departures here.

## B.

In the instant case, the district court imposed an upward departure based solely on the defendant's extensive criminal history, stating, "Based upon defendant's prior convictions, two of which would have resulted in a career offender designation, the Court concludes an upward departure is warranted."

We begin by determining whether this was a guided or an unguided departure. U.S.S.G. § 4A1.3 expressly permits district courts to make upward

---

1288, 1292 (11th Cir. 2003) ("Without a <u>clearly contrary</u> opinion of the Supreme Court or of this court sitting en banc, we cannot overrule a decision of a prior panel of this court . . . .") (emphasis in original).

10

departures if the Guidelines sentencing range "does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." However, application note 3 to U.S.S.G. § 2K2.4 states that the Guidelines in chapters 3 and 4 (including U.S.S.G. § 4A1.3) do not apply to sentences under § 2K2.4, the guideline under which Simmons was sentenced.[4] Consequently, § 4A1.3 cannot be understood as authorizing or encouraging the court in this case to use Simmons's criminal history as the basis for an upward departure.

An application note to § 2K2.4 states,

> A sentence above the minimum term required by 18 U.S.C. § 924(c) . . . is an upward departure from the guideline sentence. A departure may be warranted, for example, to reflect the seriousness of the defendant's criminal history, particularly in a case in which the defendant is convicted of an 18 U.S.C. § 924(c) . . . offense and has at least two prior felony convictions for a crime of violence or a controlled substance offense that would have resulted in application of § 4B1.1 (Career Offender) if that guideline applied to these offenses.

U.S.S.G. § 2K2.4 comment. (n.1) (2001).

As noted above, the court chose to make an upward departure because it concluded that, but for the restriction on applying the career offender guideline

---

[4] See Stinson v. United States, 508 U.S. 36, 46, 113 S. Ct. 1913, 1919, 123 L. Ed. 2d 598 (1993) ("[Guidelines] commentary is binding on the federal courts even though it is not reviewed by Congress . . . .").

11

(U.S.S.G. § 4B1.1), the defendant would have been subject to a dramatically longer sentence. We need not review whether the court was correct in its belief that Simmons technically qualified as a career offender because the plain text of the application note quoted above encourages an upward departure whenever one is necessary "to reflect the seriousness of the defendant's criminal history." While a departure based on criminal history is "particularly" appropriate if the defendant would have qualified as a career offender under § 4B1.1, the departures recommended by the application note are not limited to such defendants. Instead, the note encourages courts to grant upward departures based on serious criminal history, whether or not that criminal history is sufficient to trigger career-offender sentencing under § 4B1.1.

The record can fairly be read as indicating the district court's belief that Simmons's criminal history was sufficiently serious as to warrant an upward departure. Moreover, nothing in U.S.S.G. § 2K2.4 takes an offender's criminal history into account; indeed, the Guidelines sentence under this provision is not even based on an offender's criminal history category. Consequently, the district court made an upward departure based on encouraged grounds that had not been taken into account by the guideline under which the defendant had been sentenced.

This is an unquestionably valid type of upward departure, see supra Section III.A, and the district court did not abuse its discretion by granting it.


IV.

We must now assess whether the extent of this departure was unreasonable. "The amount by which a district court departs from the Sentencing Guidelines need only be reasonable." Kimball, 291 F.3d at 734. When assessing whether a district court "depart[ed] to an unreasonable degree from the applicable guidelines range," 18 U.S.C. § 3742(e)(3)C) (2001), we review the court's factual findings for clear error and their legal conclusions de novo. In reviewing mixed questions of fact and law, involving the application of the Guidelines to the facts of the case, we give "due deference to the district court's application of the guidelines to the facts." Id. § 3742(e).

As we explained in Williams, this "due deference" standard means that

> [w]here a determination turns primarily on the evaluation of facts (such as a witness's credibility, intonation, and demeanor) that are more accessible to the district court than to the court of appeals, we will defer to the district court's application of the law to those facts and apply "clear error" review. Similarly, a case involving application of a fairly well-understood legal standard to a complex factual scenario will be considered "primarily factual," and be reviewed for clear error.

13

340 F.3d at 1239. In cases where these special considerations do not apply, the district court decision is not "due" any deference, and we apply a de novo standard of review. De novo review is particularly appropriate where "most or all of the relevant facts are contained in the counts in the indictment for which the defendant has been convicted or pled guilty," or any other situation where the district court's determination is "best characterized as . . . a legal interpretation" rather than "the application of a clear-cut standard to a complex set of facts." Id. at 1239, 1241.

The district court increased Simmons's sentence from 60 to 160 months. It found this to be a reasonable figure because it held that, had the career offender guideline been applicable to Simmons, he would have been subject to a sentence of at least 260 months. The fact remains, however, that the Guidelines expressly prohibited the career offender statute from being applied to Simmons. The sentence to which an offender would have been subject under a patently inapplicable guideline is of no relevance to determining the sentence which should be imposed. Moreover, the Guidelines implicitly prohibit district courts from considering subsequent Guidelines amendments that result in substantive changes to the law. See U.S.S.G. § 1B1.11(b)(2) (2001) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than

14

substantive changes."). By applying an incorrect legal standard in determining an appropriate sentence, the district court necessarily abused its discretion.

Nevertheless, we have the authority to affirm the district court, even if it is on a ground other than that upon which it based its decision. See Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1363 n.1 (11th Cir. 1999) ("[W]e may affirm the district court's judgment on any ground that finds support in the record." (quotation marks and citation omitted)). Simmons has an extensive criminal history, including juvenile delinquency adjudications and adult convictions for loitering, theft, evading police, reckless driving, receiving stolen property (four times), armed robbery, aggravated assault, possession of a weapon during a crime, possession of a weapon without a permit, contempt of court, possession of a controlled substance, possession of a controlled substance with intent to distribute, obstructing officers (twice), possession of a sawed-off shotgun, possession of a firearm by a convicted felon, and criminal trespass. The district court could reasonably have concluded that, based on this history, he needed to be incapacitated for an extended period of time, for a total of 160 months. See United States v. Taylor, 88 F.3d 938, 948 (11th Cir. 1996) ("The sentence imposed by the district court was well under the statutory maximum. In view of all the circumstances, we conclude that the amount of the district court's

upward adjustment was reasonable and not an abuse of discretion.").

Consequently, the upward departure was reasonable, and Simmons's sentence is

AFFIRMED.