[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-12266
Non-Argument Calendar

_____

D.C. Docket No. 03-00156-CR-ORL-31-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL J. ODDO, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 19, 2005)

Before TJOFLAT, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

In July 2001, Bernadine Dillon contacted her ex-boyfriend, Michael Oddo,

and asked him to delete her former employer's website because she had not been

paid for her work on the website. Oddo obliged. He also redirected those trying to visit Endata Corporation's website to a pornographic website. About a year later, the FBI searched Oddo's home. While the search progressed upstairs, FBI Agents Andrew J. Hayden and Sue Ellen Clark questioned Oddo's wife and then Oddo in the furnished portion of basement. Oddo confessed to deleting Endata's website and redirecting its visitors to the pornographic website.

Oddo was indicted pursuant to 18 U.S.C. § 371 for conspiring to damage a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A)(i). He moved to suppress his incriminating statements. The district court held a hearing on the motion at which Oddo, his wife, Agent Hayden, and Agent Clark testified. The district court denied Oddo's motion to suppress and his motion to reconsider. The case went to trial and the jury was told about Oddo's incriminating statements. Further, Oddo took the stand and admitted to deleting Endata's website, which he considered to be Dillon's property because Endata had not paid her for her work on the website. Oddo was convicted. (Dillon had already pleaded guilty.)

In April 2004, the district court used the November 2003 guidelines manual to sentence Oddo to 17 months' imprisonment. The district court's sentencing calculation was partially based on the court's determination of the amount of loss ($30,077) and its decision that Oddo used a special skill (his computer expertise)

2

in committing his crime.

On appeal, Oddo contends that he was in custody at the time he made the incriminating statements to the FBI and thus the statements should have been suppressed because he was not read his Miranda rights. He also contends that his base offense level should not have been increased based on judge-determined facts in light of Blakely v. Washington, 542 U.S. ____, 124 S. Ct. 2531 (2004), and that the district court used the wrong sentencing guidelines manual in violation of the Ex Post Facto Clause. After Oddo filed this appeal, the Supreme Court decided United States v. Booker, 543 U.S. ____, 125 S. Ct. 738, 746 (2005), which clarified that the Sixth Amendment rule discussed in Blakely applies to the federal sentencing guidelines. Accordingly, we treat Oddo's Blakely challenge as a Booker challenge.

We will affirm Oddo's conviction and remand for resentencing.

## I.

Oddo contends that the district court erred in ruling that he was not in custody when he made incriminating statements to the FBI. Oddo relates his version of the interrogation, and maintains that agents surrounded his home, instructed him to remain on the couch, forbade him from using the telephone, observed him even when he went to the bathroom, situated themselves between

3

him and the exit, and questioned him for nearly an hour. He also contends that a "very large, intimidating agent guarded him the entire time." In light of these circumstances, he argues, a reasonable person would have felt as though he was not free to leave. Oddo asserts, therefore, that he was "in custody" and interrogated without being apprised of his Miranda rights, and as a result, the statements he made to the agents should have been suppressed.

"Whether a person was in custody and entitled to Miranda warnings is a mixed question of law and fact; we review the district court's factual findings on the matter for clear error and its legal conclusions de novo." United States v. McDowell, 250 F.3d 1354, 1361 (11th Cir. 2001). "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

In Miranda v. Arizona, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 1630 (1966), the Supreme Court held that, to comport with the Fifth Amendment's prohibition against compelled self-incrimination, a person taken into custody must be advised of his right to remain silent and his right to counsel prior to an interrogation. The Court defined "custodial interrogation" as "questioning initiated by law

4

enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444, 86 S. Ct. at 1612.

In determining whether Oddo was subject to a custodial interrogation, we look to "whether 'under the totality of the circumstances, a reasonable man in [his] position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave.'" McDowell, 250 F.3d at 1362 (quoting United States v. Moya, 74 F.3d 1117, 1119 (11th Cir. 1996)) (alternations in original).

Here Oddo was not subjected to custodial interrogation as defined by Miranda and its progeny because he was not subjected to "questioning initiated by law enforcement officers after [he was] taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444, 86 S. Ct. at 1612. Agents Hayden and Clark testified at the suppression hearing that Oddo was never handcuffed or physically secured, that he never asked to speak to an attorney, that he was not forced to accompany them to the basement or prohibited from returning upstairs, that the encounter was non-confrontational, and that they told Oddo that he was not required to speak with them or answer any of their questions. The district court credited the testimony of Agents Hayden and Clark over the contrary testimony of Oddo. In light of the agents' testimony, the

5

district court did not clearly err in determining that Oddo was not "in custody," and that <u>Miranda</u> warnings were not required. We will affirm Oddo's conviction.

## II.

Oddo's remaining two arguments challenge his sentence. He contends that the district court committed plain error by using the guidelines manual in effect at the time of sentencing instead of the manual in effect at the time of his crime, and that this error resulted in an increased sentence in violation of the Ex Post Facto Clause. He also contends that the district court committed plain error in violating his <u>Booker</u> rights by increasing his sentence on the basis of the amount of the loss ($30,077) and his use of special skill (his computer skills), facts which he did not admit and which were not found by a jury. Because we conclude that Oddo is entitled to resentencing based on his first argument, and because that resentencing will be conducted in accordance with the rule in <u>Booker</u>, we need not—and do not—reach Oddo's <u>Booker</u> claim.

Oddo did not object at sentencing to the court's use of the 2003 manual, and so this Court reviews only for plain error. To prevail under this standard, Oddo must show that there was an error, that the error is plain, that the error affected his substantial rights, and that the error seriously affects the fairness and integrity of the judicial proceedings. <u>United States v. Olano</u>, 507 U.S. 725, 731–32, 113 S. Ct.

1770, 1776 (1993).

In sentencing Oddo using the November 2003 guidelines manual, the district court began with a base offense level of 6 under U.S.S.G. §§ 2B1.1(a)(2) and 2X1.1(a). The court increased that level by 6 steps based on the amount of loss, U.S.S.G. § 2B1.1(b)(1)(D), and by 2 more levels because Oddo used a special skill in the commission of the offense, U.S.S.G. § 3B1.3. That yielded a total offense level of 14. When applied to a criminal history category of I, the resulting guidelines range was 15–21 months. The court sentenced Oddo to 17 months' imprisonment.

Under the November 2000 guidelines, which were in effect at the time that Oddo committed his crime in July 2001, the result would have been different. The district court would have started with a base offense level of 4 under U.S.S.G. § 2B1(a). To that, the court would have added 6 levels for the amount of loss, U.S.S.G. §§ 2B1.3(b)(1) and 2B1.1(b)(1)(G), and 2 more levels for use of a special skill, U.S.S.G. § 3B1.3. The result would be a total offense level of 12, which when combined with a criminal history of I, yields a guidelines range of 10–16 months. Hence, Oddo's 17 month sentence is in excess of the sentence which could have been imposed under the mandatory 2000 sentencing guidelines.

With respect to the Ex Post Facto Clause and the sentencing guidelines, we

have explained that:

> The Constitution's Ex Post Facto Clause . . . prevents the Government from imposing additional penalties for crimes that have already been committed. <u>See</u> U.S. Const. art. I. § 9, cl. 3 ("No ... ex post facto Law shall be passed."); <u>Calder v. Bull</u>, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (holding that "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" is an "ex post facto law[], within the words and the intent of the prohibition"). Consequently, although courts must presumptively apply the Guidelines as they exist at the time of sentencing, they may not do so where those Guidelines would lead to imposition of a harsher penalty than that to which the defendant was subject at the time of the offense. In such cases, the Guidelines applicable at the time of the offense must be applied.

<u>United States v. Simmons</u>, 368 F.3d 1335, 1337–38 (11th Cir. 2004) (alterations in original, except the first).

Accordingly, at the time Oddo was sentenced, it was plain error for the district court to use the 2003 guidelines instead of the 2000 guidelines, because the use of the mandatory 2003 guidelines resulted in an increased sentence. That is, there was error, that was plain, that affected Oddo's substantial rights, and that affected the fairness and integrity of the judicial proceedings.

We will vacate Oddo's sentence and remand to the district court with instructions to conduct, as soon as practical, a new sentencing hearing.

**CONVICTION AFFIRMED. SENTENCE VACATED AND REMANDED.**