[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 14, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16141
Non-Argument Calendar

_____

D. C. Docket No. 05-00030-CR-4-SPM-WCS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CATHERINE ANN BELL,
a.k.a. Patricia B. Anderson,
a.k.a. Evelyn Marie Brooks, etc.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 14, 2007)

Before ANDERSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Catherine Ann Bell appeals her sentence of 60 months' imprisonment for wire fraud, in violation of 18 U.S.C. § 1343. After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

Bell pled guilty to seven counts of wire fraud. Each count represented the passing of one false check to a merchant, after which the check was presented for payment via interstate wire transmission.

According to the Presentence Investigation Report ("PSI"), on April 10, 2002, Bell opened a savings account at Tallahassee Memorial Hospital Federal Credit Union ("TMHFCU") using the name Catherine Dandy. Within two weeks, Bell deposited and then withdrew $1,000. TMHFCU suffered a loss because Bell's deposited $1,000 check was drawn on another account with insufficient funds. As a member of TMHFCU, Bell had access to TMHFCU's American Banking Association routing number.

Between April 10, 2002 and March 4, 2004, Bell passed hundreds of fraudulent checks throughout the southeast containing TMHFCU's routing number, which resulted in hundreds of interstate wire transmissions. Bell used fifteen different aliases and prepared the checks to appear as if they had been

2

drawn on a variety of financial institutions. The list of business victims, other than banks, was extensive. For example, using different aliases and bank names, Bell passed fraudulent checks at Advanced Auto Parts ten times, at Bed, Bath & Beyond ten times, at Auto Zone thirteen times, at Office Depot twenty-two times, at K-Mart twenty-four times, at Sam's Club twenty-nine times, at Walmart thirty-six times, and at Winn Dixie seventy-nine times.

## B. PSI

The PSI grouped Bell's seven counts together, pursuant to U.S.S.G. § 3D1.2(d), because the offense level was determined largely based on the total amount of harm or loss, which the PSI calculated to be $93,997.93. Pursuant to U.S.S.G. § 2B1.1, the PSI assigned a base offense level of 7, but increased the offense level: (1) by 8 levels, pursuant to U.S.S.G. § 2B1.1(b)(1), because the offense involved more than $70,000, but less than $120,000; (2) by 6 levels, pursuant to U.S.S.G. § 2B1.1(b)(2)(C), because the offense involved 250 or more victims; and (3) by 2 levels, pursuant to U.S.S.G. § 2B1.1(b)(10)(C)(ii), because the offense involved the use of five or more means of identification that were produced from, or obtained by the use of, another means of identification, including fraudulent names, dates of birth and social security numbers. After a 2-level reduction for acceptance of responsibility, the PSI calculated a total offense

3

level of 21.

The criminal history portion of Bell's PSI was fifteen pages long and contained ten convictions, eight of which involved writing bad checks. The PSI, however, recommended a criminal history category of I. None of the ten criminal convictions were counted because they were either too remote in time or misdemeanor or petty offenses. In addition, the PSI listed at least twenty-two instances of "Other Criminal Conduct" involving fraud and the writing of worthless checks that either did not result in a conviction or were still pending at the time the PSI was prepared.

With a criminal history category of I and an offense level of 21, the PSI recommended an advisory guidelines range of 37 to 46 months' imprisonment. The statutory maximum term of imprisonment was 20 years for each of the seven counts. See 18 U.S.C. § 1343. The PSI cited similar uncharged or dismissed fraudulent check conduct by Bell in Leon County, Florida between 1997 and 2002, but did not use this conduct in calculating the loss calculation. Instead, the PSI noted that an upward departure might be appropriate pursuant to U.S.S.G. § 5K2.21, which permits upward departures for dismissed and uncharged conduct. Bell objected to the PSI's loss calculation and to the number of victims.

**C.    Sentencing**

At sentencing, the parties stipulated that Bell was responsible for 455 checks and caused a loss of approximately $74,000. Because the stipulated loss amount remained in the $70,000 to $120,000 range, the PSI's 8-level increase was unchanged. The parties also stipulated that there were fewer than 250 victims if repeated victims were only counted once. The stipulated number of victims reduced Bell's offense level by 2, pursuant to U.S.S.G. § 2B1.1(b)(2).

Bell also successfully argued that she should receive an additional 1-level reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(b), for timely pleading guilty. The district court's final adjusted offense level was 18, with a criminal history category of I, yielding an advisory guidelines range of 27 to 33 months' imprisonment.

Bell addressed the district court and described difficulties she had faced in her life, including raising five children as a single mother, enduring abusive relationships with men, and caring for grandchildren who had suffered abuse. Bell's counsel then asked for "some leniency," but did not ask for a specific sentence.

In response, the government argued that Bell's case was "phenomenal" and pointed to the sophisticated manner in which the checks had been manufactured. The government stressed Bell's extensive criminal history of writing bad checks

and argued that Bell was a "professional" in the art of creating false checks and that it was mind-boggling that Bell had a criminal history category of I. The government contended that Bell needed a "blunt awakening as to the consequences of, not only this conduct, but her historic conduct." Bell's counsel responded that many of the bad checks Bell had passed involved only small amounts of money.

The district court sentenced Bell to 60 months' imprisonment. Citing U.S.S.G. § 5K2.21, the district court stated that it was applying an upward departure to account for "the true magnitude of [Bell's] conduct." In imposing the 60-month sentence, the district court also pointed out: (1) that the number of checks involved alone warranted a departure; (2) that Bell, in the span of eight months, had victimized over 100 different merchants, with losses totaling more than $74,000 and that some stores had been victimized repeatedly; (3) that Bell had used numerous fraudulent names, social security numbers, birth dates and driver's license numbers, as well as other false identification; (4) that Bell's criminal history score did not reflect the magnitude and repetitive nature of her conduct; (5) that Bell had been charged with false checks and forgery as far back as 1981; and (6) that from 1998 through 2002 Bell had engaged in a course of conduct, primarily 65 false checks in Leon County, Florida, that was "almost identical" to the criminal conduct in the instant case. The 65 false checks and resulting losses

from the Leon County conduct were uncharged conduct and not taken into account in the calculation of Bell's guidelines range. After pronouncing the sentence, the district court asked whether there were any objections, and neither party objected. The statement of reasons for the sentence filed by the district court also cited U.S.S.G. § 5K2.21, entitled "Dismissed or Uncharged Conduct," as the basis for its upward departure.

## D.    Rule 35(a) Motion to Correct Sentence

Four days after sentencing, Bell filed a Rule 35(a) Motion to Correct Sentence, arguing that the sentence was clear error. Among other things, Bell argued that the district court had improperly relied upon U.S.S.G. § 4A1.3 (inadequate criminal history category) in departing upward.

While this appeal was pending, the district court denied Bell's Rule 35(a) motion. In its order, the district court noted that the upward departure was authorized: (1) by U.S.S.G. § 4A1.3 based on Bell's criminal history, (2) by U.S.S.G. § 5K2.0(a)(3) (circumstances present to a degree not adequately taken into consideration by the guidelines) based on the number of checks Bell passed, and (3) by U.S.S.G. § 5K2.21 based on the dismissed and uncharged conduct between 1998 and 2002 in Leon County, Florida.[1]

_____

[1]The district court's ruling on the Rule 35(a) motion is not within the scope of this appeal. See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 661 (11th Cir. 1998)

## II. DISCUSSION

### A.     Upward Departure

On appeal, Bell challenges the district court's decision to depart upwardly. Pursuant to U.S.S.G. § 5K2.21, a district court "may depart upward to reflect the actual seriousness of the offense" based on a reason "that did not enter into the determination of the applicable guideline range." U.S.S.G. § 5K2.21.[2]

Here, Bell pled guilty to only seven fraudulent checks. Bell contends that the district court improperly based its upward departure on the other 455 uncharged fraudulent checks she passed which were used in calculating the total loss amount under U.S.S.G. § 2B1.1(b)(1) and the number of victims under U.S.S.G. § 2B1.1(b)(2). See United States v. Simmons, 368 F.3d 1335, 1340 (11th Cir. 2004).

The record as a whole, however, indicates that the district court relied upon other uncharged conduct, namely the over 60 worthless checks Bell passed between 1998 and 2002 in Leon County, Florida. Specifically, the district court noted at sentencing:

_____

(explaining that a notice of appeal generally does not include orders that have not been entered at the time the notice is filed).

[2]Because Bell did not object to the district court's upward departure at sentencing, we review for plain error. United States v. Olano, 507 U.S. 725, 731-32, 113 S. Ct. 1770, 1776 (1993); United States v. Maurice, 69 F.3d 1553, 1557 (11th Cir. 1995) (failure to object when the district court asks for Jones objections at the conclusion of sentencing results in plain error review on appeal).

From '98 through 2002, you undertook a course of conduct almost identical to that in the instant case, focusing your efforts on Leon County whose merchants lost over $11,000 through your utterance of 65 false checks.

You also used numerous fraudulent names, social security numbers, birth dates and driver's license numbers, as well as other false identifying information.

Furthermore, the district court's order (denying Bell's Rule 35(a) motion) stated that the basis for its § 5K2.21 upward departure was the uncharged and dismissed Leon County conduct between 1998 and 2002. It is undisputed that this Leon County conduct was not used in calculating Bell's advisory guidelines range. Therefore, the Leon County conduct provided a proper basis for the district court's U.S.S.G. § 5K2.21 upward departure. Accordingly, we find no plain error.[3]

**B.    Reasonableness**

Bell also argues that her 60-month sentence was unreasonable, emphasizing that it is approximately double her pre-departure guidelines range of 27 to 33 months' imprisonment.[4]

We review the ultimate sentence imposed by the district court for

---

[3]The district court's order also explained that the "sheer number of [455] checks" involved in the instant scheme alternatively justified an upward departure under U.S.S.G. § 5K2.0(a)(3). Because we find no plain error in the district court's imposition of an upward departure based on U.S.S.G. § 5K2.21, we do not address the other possible bases for the upward departure.

[4]We note that the district court's upward departure pursuant to U.S.S.G. § 5K2.21 resulted in a 6-level increase in Bell's offense level, for an advisory guidelines range of 51 to 63 months' imprisonment. Thus, Bell's ultimate sentence actually fell within the applicable advisory guidelines range.

reasonableness in light of the factors in 18 U.S.C. § 3553(a). <u>United States v. Martin</u>, 455 F.3d 1227, 1237 (11th Cir. 2006). The party challenging the sentence bears the burden to show that the sentence is unreasonable. <u>United States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005).

Bell has not shown that her sentence is unreasonable. As the district court noted, Bell's check fraud scheme was one of extraordinary magnitude, sophistication and repetition. Bell's final fraudulent check passing spree came at the end of an extensive history of similar criminal conduct. We cannot say on this record that the district court's 60-month sentence, well below the statutory maximum twenty-year sentence, was unreasonable.

**AFFIRMED.**