[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 19, 2007
THOMAS K. KAHN
CLERK

No. 07-12109
Non-Argument Calendar

_____

D. C. Docket No. 06-00001-CR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE FREE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(November 19, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Willie Free appeals his conviction for possession with intent to distribute

cocaine base and cocaine, in violation of 21 U.S.C. § 841(a)(1). In October 2005, Free picked up his roommate, Omar Mims, and the two went to a nightclub in Statesboro, Georgia. While they were there, officers from the Statesboro Police Department arrested Mims for passing counterfeit money to the nightclub. During a search incident to Mims' arrest, the officers discovered two small bags of marijuana on his person. One of the officers, Detective Robert Bryan, then asked Free for permission to search his vehicle; Free consented. After no contraband was found in Free's car, Detective Bryan informed Free that he could leave, and Free stated that he would be returning to his home in Screven County, a rural county northwest of Statesboro.

While he was wrapping up his investigation at the nightclub, Detective Bryan received a call from another officer who had interviewed Mims. According to the officer, Mims said that Free had given him both the counterfeit money and the marijuana, and that Free would be returning to their apartment in Statesboro to destroy the remaining counterfeit money and drugs. After receiving this information, Detective Bryan drove to the apartment complex specified by Mims, where he arrived at the same time as Free. When asked what he was doing at the complex, Free said he was looking for his cousin, Big Camp, and he denied knowing who lived in the apartment near where he parked his car.

2

At that time, just after midnight, Corporal Kevin Weatherly arrived, and Detective Bryan asked Weatherly to knock on the door of the apartment. When a woman answered, Detective Bryan asked Corporal Weatherly to wait with Free and went to speak with her. He determined that the woman's name was Blair Rhodes. Rhodes confirmed that Free lived at the apartment and was the father of her child, and she gave consent for the officers and Free to enter the apartment. Detective Bryan had Corporal Weatherly bring Free into the apartment with them. Because the two bedrooms were dark and the bathroom door was closed, Detective Bryan then instructed Corporal Weatherly to conduct a protective sweep of the entire apartment, which revealed a small amount of marijuana in plain view.

Rhodes then declined consent for the officers to conduct a search of the apartment. After Rhodes denied consent to search, Detective Bryan left the apartment in order to submit an affidavit for a search warrant based primarily on: (1) Mims' statements about the counterfeit money and marijuana; and (2) the marijuana found during the protective sweep. After obtaining a warrant, the officers searched the apartment, and they found cocaine, cocaine base, marijuana, a counterfeit $20 bill, and a semi-automatic rifle.

In his subsequent prosecution for possession of cocaine base and cocaine, Free moved to suppress the evidence from the later search, arguing that: (1)

3

Corporal Weatherly's warrantless protective sweep of the apartment violated his Fourth Amendment right against unreasonable searches and seizures because it was not conducted incident to an arrest; and (2) the evidence found in the later search should be excluded as fruit of the poisonous tree because the search warrant was based on evidence discovered during the unlawful protective sweep. The district court denied Free's motion to suppress, finding that the protective sweep was valid because, according to the court, protective sweeps may be conducted in situations not incident to an arrest. Free then conditionally pleaded guilty to possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. § 841(a)(1), reserving his right to appeal on the suppression issue. Free argues on appeal that the district court erred by: (1) concluding that a valid protective sweep can occur when it is not incident to an arrest; and (2) failing to suppress all of the evidence that was discovered during the search of the apartment.

We review the district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and its application of law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235–36 (11th Cir.), cert. denied, 127 S. Ct. 2924 (2007).

Free argues that the district court erred by concluding that the protective sweep was valid because, according to Free, a protective sweep can only be valid

4

when it is incident to an arrest, not when it occurs after the owner consents to entry. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "The Fourth Amendment demonstrates a strong preference for searches conducted pursuant to a warrant." Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996) (quotation omitted). Searches inside a residence without a warrant are presumptively unreasonable, absent probable cause and exigent circumstances. United States v. Santa, 236 F.3d 662, 668 (11th Cir. 2000).

In Maryland v. Buie, 494 U.S. 325, 110 S. Ct. 1093 (1990), where the police discovered evidence while conducting a protective sweep of a basement after fully executing an arrest warrant, the Supreme Court stated:

> We also hold that as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.

5

Buie, 494 U.S. at 334, 110 S. Ct. at 1098. The Court in Buie permitted police officers to undertake protective sweeps incident to arrest because of the compelling "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack," emphasizing that the intrusion must be "no more than necessary to protect the officer from harm." Id. at 333, 110 S. Ct. at 1098.

We have not decided whether the police may conduct a protective sweep only incident to a lawful arrest, and we need not do so here. Even assuming without deciding that Corporal Weatherly's protective sweep violated Free's Fourth Amendment rights, the warrant for the subsequent search was still valid because probable cause for the search was established by the affidavit independent of its reference to the small amount of marijuana discovered during the protective sweep. The government made this argument before the district court, but the court, having concluded that the protective sweep was valid, did not address it. Nonetheless, we may "affirm the district court, even if it is on a ground other than that upon which it based its decision." United States v. Simmons, 368 F.3d 1335, 1342 (11th Cir. 2004).

We review de novo whether an affidavit for a warrant established probable

cause, but "we must 'take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" United States v. Jiminez, 224 F.3d 1243, 1248 (11th Cir. 2000) (quotation omitted).

When some of the evidence in an affidavit is found to have violated the Fourth Amendment, "if sufficient untainted evidence was present in the affidavit to establish probable cause, the warrant was valid." United States v. Whaley, 779 F.2d 585, 589 n.7 (11th Cir. 1985) (citing United States v. Karo, 468 U.S. 705, 719, 104 S. Ct. 3296, 3305 (1985)). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002).

Excluding the reference in the affidavit to the small amount of marijuana found during the protective sweep, the affidavit contained the following information: (1) Free had admitted he had picked up Mims and brought him to the nightclub where Mims was arrested; (2) after Mims was arrested he told one of the

officers that he had gotten the counterfeit money and marijuana from Free and that Free would be going back to their apartment to destroy the remaining money and drugs; (3) Mims also told the officers that the remaining money and drugs could be found in Free's bedroom and that he knew that people were paying $50.00 of real money for $500.00 of the counterfeit money; (4) because of Mims' statements, Detective Bryan responded to the apartment Mims specified; (5) Detective Bryan arrived at the apartment at the same time as Free, and Free said he did not live in the apartment and did not know who lived in the apartment; (6) Rhodes was living in the apartment and told Detective Bryan that she was pregnant with Free's child and that Free had been in the apartment earlier that day; and (7) Rhodes permitted Detective Bryan to bring Free into the apartment to discuss the events of that evening.

We conclude that this information established probable cause for the subsequent search of the apartment, and therefore that the search warrant was valid. See Whaley, 779 F.2d at 589 n.7. Mims had provided Detective Bryan with the address of the apartment that he claimed he and Free shared, which Bryan corroborated as soon as he saw Free arrive at the apartment. This information was further corroborated when, in spite of Free's claim that he did not know who lived in the apartment, Rhodes said that Free was the father of her child and had been in

8

the apartment earlier that day. Mims' additional statement detailing the specific location of the remaining counterfeit money and marijuana suggested that Mims was speaking from his own personal knowledge and that he was also not likely to lie because after "the warrant issued, lies would likely be discovered in short order and favors falsely curried would dissipate rapidly." See Brundidge, 170 F.3d at 1353 (quotation omitted). Conversely, Free had continually lied to Detective Bryan about where he was going after leaving the nightclub, as well as about his connection to the apartment.

Through the statements of Mims and Rhodes, as corroborated through Detective Bryan's own observations, the affidavit provided sufficient information to connect Free to the apartment (in spite of Free's efforts to conceal his ties to it) and to link the apartment to the counterfeiting and drug activities. Therefore, the affidavit provided facts "sufficient to justify a conclusion that evidence or contraband [would] probably be found at the premises to be searched." See Martin, 297 F.3d at 1314. Although the district court did not base its decision denying the suppression motion on the sufficiency of the affidavit without the statement about the marijuana found during the protective sweep, we nonetheless affirm the district court on that basis. See Simmons, 368 F.3d at 1342.

**AFFIRMED**

9