[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-13930
Non-Argument Calendar

_____

D.C. Docket No. 5:07-cr-00055-RH-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LUIS ABEL NEVAREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(March 30, 2017)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Luis Abel Nevarez appeals his 192-month sentence, imposed at the middle of the applicable guideline range, after he pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute more than five

kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846, and one count of conspiracy to import more than five kilograms of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B), 963. The district court found that Nevarez failed to qualify for relief under the safety-valve provision in U.S.S.G. § 5C1.2 and § 2D1.1(b)(17) because Nevarez failed to meet two of the five safety-valve criteria -- that the defendant did not possess a firearm in connection with the offense and that the offense did not result in death to any person. On appeal, Nevarez argues that the district court erred by not granting him the two-level safety-value reduction in offense level because: (1) the district court misapplied recent revisions to the relevant conduct provisions in the Guidelines and factually erred in concluding that deaths occurred in connection with Nevarez's conspiracy; and (2) the district erred in finding that, although Nevarez himself did not possess firearms in connection with the conspiracy, he aided and abetted the possession of others involved in the conspiracy. After careful review, we affirm.

In reviewing safety-valve decisions, we review a district court's factual determinations for clear error and interpretations of the statutes and Sentencing Guidelines de novo. United States v. Poyato, 454 F.3d 1295, 1297 (11th Cir. 2006). A district court's factual finding is not clearly erroneous if it is plausible in light of the record. United States v. Siegelman, 786 F.3d 1322, 1333 (11th Cir. 2015), cert. denied, 136 S. Ct. 798 (2016). Further, where two permissible views

2

of the evidence exist, the factfinder's choice between them cannot be clearly erroneous. United States v. Izquierdo, 448 F.3d 1269, 1278 (11th Cir. 2006). The defendant bears the burden to prove his eligibility for safety-valve relief. United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004). We may affirm on any ground supported in the record. United States v. Simmons, 368 F.3d 1335, 1342 (11th Cir. 2004); see also Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

Under U.S.S.G. § 5C1.2, a defendant who meets the criteria in subsections (a)(1) through (a)(5) is eligible for sentencing without regard to the statutory minimum and for a two-level offense level reduction under U.S.S.G. § 2D1.1(b)(17). Among those five criteria are that the "defendant did not . . . possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense," U.S.S.G. § 5C1.2(a)(2), and that "the offense did not result in death or serious bodily injury to any person," id. § 5C1.2(a)(3). "'Offense,' as used in [§ 5C.2(a)(2)–(4)] . . . mean[s] the offense of conviction and all relevant conduct." Id. § 5C1.2, comment. (n.3). "Consistent with § 1B1.3 (Relevant Conduct), the term 'defendant,' as used in [§ 5C1.2(a)(2)] limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused." Id. §

3

5C1.2, comment. (n.4).[1]   However, a co-conspirator's firearm possession that is reasonably foreseeable may not preclude safety-valve relief.  See United States v. Clavijo, 165 F.3d 1341, 1342–43 (11th Cir. 1999) (noting the term "defendant" as used in subsection (2) limits the defendant's accountability "to his own conduct and conduct that he aided and abetted, counseled, commanded, induced, procured, or willfully caused" (quotation omitted)).

In Rosemond v. United States, the Supreme Court held that a defendant's culpability for aiding and abetting his confederate's firearm use in a drug trafficking case requires (1) active participation in the drug trafficking, and (2) advance knowledge that a confederate would carry a gun.  134 S. Ct. 1240, 1243–45 (2014) (analyzing the interplay of 18 U.S.C. § 924(c), which prohibits carrying or using a gun in connection with drug trafficking, with 18 U.S.C. § 2, which holds accountable as a principal a person who "aids, abets, counsels, commands, induces, or procures" a federal offense).  The Court held that Rosemond's participation in the underlying drug deal satisfied aiding and abetting's requirement of active participation in the drug trafficking.  Id. at 1247.  Nonetheless, the Supreme Court remanded the case because the district court had not instructed the jury to consider

---

[1] Amendment 790 to the Guidelines amended U.S.S.G. § 1B1.3(a)(1)(B)'s definition of "relevant conduct," striking "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."  U.S.S.G. App. C, amend. 790.  It added instead "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity."  Id.; see also id. § 1B1.3(a)(1)(B) (2015).

whether Rosemond had advance knowledge that a confederate would carry a gun. Id. at 1243, 1249, 1252. The Court noted that a defendant with this knowledge "align[s] himself with the illegal scheme in its entirety -- including its use of a firearm." Id. at 1249. We've held, in another case, that a co-conspirator's pattern of firearm possession during prior joint undertakings may support the conclusion that the defendant knew his co-conspirator would possess a firearm. See United States v. Thompson, 610 F.3d 1335, 1339 (11th Cir. 2010) (holding that a reasonable jury could conclude that the defendant knew his confederate would possess a firearm during a bank robbery when the defendant participated in a prior bank robbery in which the same confederate was armed).

Here, the district court found that Nevarez failed to meet two of the five safety-valve criteria -- that he did not possess a firearm in connection with the offense and that the offense did not result in death to any person. On the record before us, we cannot say that the district court's firearm finding was implausible. Siegelman, 786 F.3d at 1333. For starters, Nevarez conceded that he participated in the drug trafficking conspiracy, satisfying the requisite act for aiding and abetting. Rosemond, 134 S. Ct. at 1247. Moreover, the record contains enough evidence to support a finding that Nevarez knew his co-conspirators would possess a firearm during the drug trafficking conspiracy. Id. at 1243, 1249; Thompson, 610 F.3d at 1339. Juan Chávez -- Nevarez's brother-in-law and codefendant in this

5

case, and the leader of Nevarez's drug trafficking organization -- used his organization to traffic guns to Mexico and sold at least one gun to a member of Panama City's Gadson organization, which participated in the Chávez organization's drug trafficking enterprise. Nevarez, who was Chávez's right-hand man, knew that the Chávez organization trafficked guns to Mexico and that Chávez sold a gun to the Gadson organization. Further, Chávez possessed guns during Nevarez and Chávez's jointly undertaken activity in Mexico. Nevarez also participated in the Chávez organization's gun trafficking activities by serving as the contact for Sarjio Nevarez, who was Nevarez's brother, when Sarjio returned to the United States with proceeds from trafficking guns to Mexico.

Nevarez presented no rebutting evidence, but argues only that (1) the government failed to present evidence detailing when Nevarez learned of his co-conspirators' firearms possession, and (2) Nevarez was in jail during most of Sarjio's gun trafficking activity. However, Navarez cannot simply allege that the government failed to prove he had advance knowledge; rather, he must show that he lacked advance knowledge, which he failed to do. Johnson, 375 F.3d at 1302. Thus, the district court did not clearly err in finding that Nevarez aided and abetted his co-conspirators' firearms possession in connection with the conspiracy.

Because Nevarez's aiding and abetting the possession of firearms alone is sufficient to preclude safety-valve relief under U.S.S.G. § 5C1.2(a) and §

6

2D1.1(b)(17), the court did not err by denying safety-valve relief to Nevarez. Accordingly, we need not address whether the district court clearly erred in finding the offense did not result in death, see Simmons, 368 F.3d at 1342; Fed. R. Crim. P. 52(a), and we affirm Nevarez's sentence.

**AFFIRMED**.